==================
 MDL No. 12-0156
 ==================

 In re State Farm Lloyds Hurricane Ike Litigation

 ═════════════════════════════════════════════════════════════
 ON REVIEW BY THE MULTIDISTRICT LITIGATION PANEL
 ═════════════════════════════════════════════════════════════

Presiding Judge Peeples delivered the opinion of the MDL Panel.
 State Farm Lloyds has asked us to transfer 266 insurance lawsuits, pending in sixteen
counties, to an MDL pretrial court.[1] The cases arise from damage caused by Hurricane Ike in
2008.[2] By separate orders issued earlier, we have granted State Farm’s Motion to Transfer and
assigned a pretrial judge.
 Administrative Rule13 authorizes us to transfer “related” cases (i.e. cases involving common
questions of fact) from different trial courts to a single pretrial judge if transfer will (1) serve
the convenience of the parties and witnesses and (2) promote the just and efficient conduct of the
litigation. See In re Petroleum Wholesale Litig., 339 S.W.3d 405, 406 (Tex. M.D.L. Panel 2009); In
re Hurricane Rita Evacuation Bus Fire, 216 S.W.3d 70, 71-72 (Tex. M.D.L. Panel 2006); Tex. R. Jud.
Admin. 13.2(f), 13.3(a), 13.3(l).
 These cases are related because they arise from one event and the plaintiffs seek common
discovery on the ground that State Farm has a “general business practice” of adjusting claims in a
way that is unfairly designed to tilt the process in its favor and against the policyholder.
Plaintiffs seek discovery tailored to each specific case and also discovery delving into State
Farm’s broader practices in property insurance cases generally.[3] For the reasons stated in In re
Texas Windstorm Insurance Ass'n Hurricanes Rita and Humberto Litig., 339 S.W.3d 401 (Tex. M.D.L.
Panel 2009), and In re Delta Lloyds Insurance Company, 339 S.W.3d 384 (Tex. M.D.L. Panel 2008),
which need not be repeated here, the cases are related for purposes of Rule 13.[4]
 Rule 13 is patterned after the federal MDL process, which seeks to “eliminate duplicative
discovery, avoid inconsistent pretrial rulings, and conserve the resources of the parties, their
counsel, and the judiciary.” See In re Vioxx Prods. Liab. Litig., 360 F.Supp. 2d 1352, 1354
(J.P.M.L. 2005); accord 15 Charles A. Wright, et al, Federal Practice and Procedure § 3863, at 175
(2d ed. Supp. 2003).
 Rule 13 rests on the premise that a legal system should not give different answers to a
 question, or allow repetitive discovery, or subject witnesses or lawyers to conflicting
 demands, simply because the cases are pending before different judges in different parts of the
 state.

In re Digitek Litig., No. 09-0408, at *3 ( Tex. M.D.L. Panel, Aug. 5, 2009).
 In deciding whether transfer to a pretrial court will further the general MDL goals of
convenience, efficiency, and justice, our more specific inquiry is whether transfer would: (1)
eliminate duplicative and repetitive discovery, (2) minimize conflicting demands on witnesses, (3)
prevent inconsistent decisions on common issues, and (4) reduce unnecessary travel. Id. at *2. A
fifth objective of the MDL process is to allocate finite judicial resources intelligently by
minimizing the occasions when different judges decide the same or similar issues again and again.
When one trial judge has decided an issue that is common to a set of related cases, the legal system
cannot afford to let other trial judges spend time deciding the issue again. Time and energy are
finite quantities, and when a judge spends docket time and effort on A and B there will be less time
and energy remaining for X and Y. Rule 13's concern for efficiency rests on the belief that
unnecessary relitigation of issues, which can deprive other litigants of their fair share of
courtroom time, is an extravagance that the legal system cannot afford. “To the extent that the
pretrial judge’s workload does increase, that would seem to be more than offset by the decreased
workload the other [] judges will collectively enjoy.” See In re Silica Prods. Liab. Litig., 166
S.W.3d 3, 8 (Tex. M.D.L. Panel 2004).

 The parties disagree as to whether judges in the different counties have already issued
inconsistent rulings, and whether witnesses have already been inconvenienced by conflicting
demands.[5] We need not resolve these disagreements about the past because Rule 13 focuses on
whether assigning the cases to an MDL pretrial court will further the goals of convenience,
efficiency, and just handling in the future. See, e.g., In re Continental Airlines Flight 1404,
No. 09-0201, at *7 (Tex. M.D.L. Panel, May 7, 2009) (“A moving party need not establish an existing
problem that requires correction”); In re Ocwen Loan Servicing Litig., 286 S.W.3d 669, 672 (Tex.
M.D.L. Panel 2007) (“Rule 13 seeks to prevent the occurrence of problems in the future and is not
limited to correcting ongoing problems from the past”); Hurricane Rita Bus Fire, supra, 216 S.W.3d
at 72 (“The movant need not show that anyone has already been inconvenienced or that there are
existing problems to be addressed”)[6]; Silica Litig., supra, 166 S.W.3d at 5 (MDL motion does not
require showing of inconvenience or other past problems; it “looks ahead” and asks whether transfer
to a pretrial judge would promote convenience in the future).[7]
 To be sure, a history of inconsistent rulings and conflicting demands on witnesses can
indicate what might happen in the future; and such a history can also help justify a stay of
proceedings while the motion is being considered. But nothing in the rule, or the policies it
serves, requires proof of existing dysfunction before the MDL process may be invoked to bring order
and rationality to the handling of related cases.
 When 266 cases with common issues are pending in sixteen counties, litigants who are unhappy
with an early ruling may be tempted to present the issue again in a second court. This is
especially true with rulings on the scope of discovery, such as what categories of documents (like
those summarized in footnote 3) must be located and produced, and for how many years.[8] Discovery
will be reasonably confined when the issues are limited to coverage, causation, the claim settlement
process, and damages involving one plaintiff’s property and a single event. But when, as here, the
issues are expanded to a defendant’s business practices generally, over a period of years, there are
likely to be repeated efforts to seek broader discovery rulings from other courts. This is true
because if a second court grants discovery that the first court denied, the documents are, in
practical effect, produced for all cases.
 We now consider arguments that: (1) transfer will cause delay; (2) transfer is not needed
because several counties have already set up pretrial courts for these cases; (3) transfer to a
pretrial court will result in “one size fits all” discovery; and (4) the panel should await
decisions in pending mandamus proceedings, a corrective process that shows the system is working as
designed.
 Delay. Plaintiffs express concern that transferring these 266 cases to one pretrial court
will delay several existing trial settings and will also delay all the cases generally. As we have
said before, an MDL proceeding should not cause delay unless the pretrial judge consciously decides,
as a matter of discretion, to remand a case later rather than sooner.[9] The delay argument also
seems weakened by the fact that some cases arising from this September 2008 hurricane were filed
recently, and most of the older cases were abated for more than three years to allow mediation.[10]
Moreover, we are not persuaded that appointing one judge to give coordinated and consistent
management to 266 cases, with common issues decided once and for all, will be slower than having
several judges in different counties hold sequential hearings on the same issues, as the parties
relitigate one or more common issues that were decided earlier in another court.
 Existing pretrial courts. We are told that an MDL pretrial court is not needed because the
largest counties have already assigned their cases to one judge for pretrial handling, a process
that is to be commended. Not every county has done this, and even if all twelve counties with more
than one case had placed their cases into the hands of one judge, there would still be sixteen
judges handling 266 cases. Pretrial courts operating under the rules of civil procedure,
supplemented by local rules, are simply not able to serve Rule 13's goals because an MDL pretrial
court, unlike other trial courts, is empowered—and instructed—to ensure the orderly and coordinated
remand of cases for trial:
 . . . Rule 13 contemplates that the pretrial judge will be involved in the details of
 trial settings. When discovery is complete and an MDL case is ready for trial, Rule 13 does
 not allow the pretrial judge to simply return the case to the trial court without consultation
 or further instructions. On the contrary, when remanding a case the pretrial judge is
 instructed to: (1) consult with the trial judge about the trial setting, (2) consider the
 convenience of the parties and witnesses in the remanded case, and (3) consider the efficient
 handling of the cases remaining in the MDL proceeding. . . .
 Pretrial judges are granted continuing authority over remanded cases for the plain reason
 that continuances, resettings, and further discovery after remand could interfere with the
 pretrial judge's management of the remaining MDL cases. Rule 13 therefore limits the trial
 judge's power to make rulings in remanded cases that might interfere with the remaining MDL
 cases. Thus the pretrial judge, being responsible for the efficient handling of the entire
 group of MDL cases, might want to ensure that each trial setting is a realistic one, that it is
 first on the docket and not merely one among many cases competing for attention.

Texas Windstorm, supra, 339 S.W.3d at 404-405 (emphasis in original). The use of county-wide
pretrial courts for these cases, while commendable, cannot suffice for a pretrial court with Rule 13
obligations and powers.
 “One size fits all” discovery. One plaintiff stresses that he is interested in different
discovery than the great majority of plaintiffs, who are largely represented by one law firm.[11]
He fears that an MDL pretrial court will limit him to “one size fits all” discovery. This argument
rests on a mistaken assessment of what the pretrial judge is expected to do. The pretrial judge
will, of course, deal with general discovery issues common to the majority of cases. Common issues
will be given uniform judicial treatment and will be decided consistently. But the judge will also
give individual attention to the unique issues and contentions in other cases. Every lawsuit in an
MDL proceeding will have its individual, case-specific issues, which the pretrial judge will decide
as any trial judge would. Transfer of cases to a pretrial court does not make this a “big issues
only” proceeding; “it simply puts a different judge in place to make decisions about pretrial
matters . . . .” Cano Petroleum, supra, 283 S.W.2d at 182. As we have said before, “We are
confident that the pretrial judge will give individual consideration to case-specific issues, while
giving consistent, uniform treatment to the common and recurring issues.” See Silica Litig., supra,
166 S.W.3d at 6.
 “The system is working.” State Farm has sought mandamus review of several adverse discovery
rulings. We are told that the appellate courts will soon decide these cases and therefore “the
system is working as it is designed to work.” This argument fails to recognize two realities.
First, mandamus review of individual rulings for abuse of discretion will not address any of Rule
13's most salient objectives: to eliminate duplicative and repetitive discovery, to promote
consistent rulings on common issues, to avoid conflict and inconvenience, and to conserve judicial
resources. The availability of mandamus review, whose importance is not questioned, does not satisfy
the need for a pretrial court. Second, and more important, the MDL procedure must also be
considered part of the Texas legal system “as it is designed to work.” Rule 13, based on a mandate
from the Texas Legislature in 2003, has added an additional procedure for cases with common issues
of fact where the values of convenience, efficiency, and just handling are implicated. When a
pretrial MDL court is assigned in an appropriate set of cases, as has happened here, the system is
working as it is designed to work.

 For the reasons stated, the motion to transfer is granted.

Chief Justice Stone, Chief Justice McClure, and Justice Brown concur. Chief Justice Wright did not
participate.

 __________________________________
 David Peeples, Presiding Judge
-----------------------
 [1] The counties with pending cases are: Harris (134), Jefferson (37), Fort Bend (22),
Galveston (18), Brazoria (16), Orange (14), Montgomery (8), Hardin (4), Polk (3), Chambers (2),
Liberty (2), Tyler (2), Grimes (1), Matagorda (1), Cherokee (1), and Wharton (1).

 [2] Most of the cases were filed in 2010, although others were filed in 2009, 2011, and 2012.
The cases before us are those remaining after a three-year abatement for mediation.
 [3] Our record includes a sampling of pleadings, discovery requests, and orders that are said
to be representative in these cases.

 Most of the allegations and discovery are case-specific. A typical petition, for example,
alleges that: (1) Hurricane Ike damaged the insured plaintiff’s roof, allowing water to enter and
damage the house and contents; (2) the adjusters mishandled and undervalued the claim; (3) State
Farm and the adjusters did not make timely settlement offers, did not timely pay the claim, engaged
in fraud and misrepresentation, failed to explain their reasons for inadequate offers, failed to
conduct a reasonable investigation, made an outcome-oriented investigation, and concealed
information; and (4) plaintiff is entitled to actual, treble, and punitive damages because State
Farm engaged in unfair settlement practices, violated the insurance code, breached the contract and
its duty of good faith and fair dealing, and committed fraud.

 Other allegations and discovery are not limited to the individual case. Some petitions, for
example, after making the assertions summarized above, continue with this paragraph:

 Plaintiff’s experience is not an isolated case. The acts and omissions State Farm committed in
 this case, or similar acts and omissions, occur with such frequency that they constitute a
 general business practice of State Farm with regard to handling these types of claims. State
 Farm’s entire process is unfairly designed to reach favorable outcomes for the company at the
 expense of the policyholders.

 A typical request for production seeks these items for the last five years: (1) training and
educational materials; (2) procedure and policy manuals; (3) communications from the Department of
Insurance about claims-handling practices; (4) advertisements; (5) demand letters, complaints, and
lawsuits; (6) materials given to adjusters, contractors, and roofers; (7) computer programs and
electronic data; (8) reference materials; (9) materials and documents given to contractors and
roofers; (10) organizational charts; and (11) correspondence about problems with billing and claims
handling.

 The same request seeks the following documents from 2002 to the present: (1) correspondence to
and from vendors; and (2) all property-damage lawsuits or “disputes” against State Farm nationwide.
It also seeks the following documents without time limitation: (1) previous discovery requests
concerning property damage; (2) discovery requests concerning training; and (3) studies that either
analyze claims strategies or are designed to help improve corporate profits. One other request
seeks correspondence and lawsuits since 2000.
 [4] We have denied the motion for transfer in the Theresa Moor case, which was filed by an
attorney who has only one lawsuit and seeks only case-specific discovery.
 [5] The main brief for the plaintiffs says the various courts “have made literally thousands of
pretrial rulings.”
 [6] As we said in Hurricane Rita, though no witnesses “have yet been subjected to conflicting
demands or repetitive discovery, we conclude that assigning one pretrial judge to handle the cases
arising from this one tragic event will further rule 13's laudable goals of efficiency and
convenience.” Hurricane Rita Bus Fire, 216 S.W.3d at 72.
 [7] These holdings “[do] not mean that it is sufficient to make the bare assertion that
witnesses might be inconvenienced. The circumstances of the litigation must at least make the
assertion plausible.” In re Ad Valorem Tax Litig., 216 S.W.3d 83, 86 (Tex. M.D.L. Panel 2006). The
assertion is plausible here, where 266 cases remain after mediation of many more, discovery is in
full swing, and many cases involving common witnesses may be remanded for trials.
 [8] For example, some of the local pretrial courts have disagreed significantly about the scope
and extent of e-mails to be produced concerning State Farm’s business practices—the subject matter,
the senders and recipients, and the period of time.
 [9] In In re Cano Petroleum, Inc., 283 S.W.3d 179 (Tex. M.D.L. Panel 2008), we observed that
MDL proceedings cause delay only if the pretrial judge decides there are reasons not to remand a
case:

 First, appointment of a pretrial judge has no direct effect on existing settings. It does not
 necessarily cause delay; it simply puts a different judge in place to make decisions about
 pretrial matters, including whether and when to remand cases for trial and whether to postpone
 and reschedule existing trial settings. . . . Existing trial settings are not affected unless
 the pretrial judge makes such a ruling and postpones a trial setting.

 Second, the granting of an MDL motion does not mean that all cases must proceed at the pace of
 the slowest. When an individual case is ready for trial, the pretrial judge will ordinarily
 remand it for trial after consulting with the original trial court about docket realities. The
 readiness of one case for remand should not be affected by the readiness of other cases because
 appointment of a pretrial judge does not consolidate cases for purposes of trial; it brings
 them together for pretrial purposes only. There is no reason why all related cases must be
 ready for trial before any may be remanded. Nothing in this opinion or our order granting the
 MDL motion prevents the pretrial judge from remanding any case for trial at any time he deems
 the case ready. Whether a case is ready for remand and trial is a decision for the pretrial
 court to make in its broad discretion.

Id. at 182 (emphasis in original).
 [10][11]*,.T\`tšœž [12] , . ª „†Šºþ
>
?
æ
 See footnote 2, supra.
 [13] One law firm represents the plaintiffs in 200 of the 266 cases.